UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALEXANDER ACOSTA PEREZ,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No. 2:26-cv-03056-TMC

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## I. INTRODUCTION

Petitioner Alexander Acosta Perez is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 7. He petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his detention has become indefinite in violation of the Immigration and Nationality Act ("INA"). *Id.* For the reasons set forth below, the Court GRANTS the petition.

## II. BACKGROUND

Petitioner, a Cuban citizen, entered the United States seeking asylum in January 2017. Dkt. 7 at 7; Dkt. 14 ¶¶ 3–4. Upon Petitioner's arrival at a port of entry, U.S. Customs and Border Patrol officers determined that he was inadmissible to the United States and initiated expedited removal proceedings. Dkt. 14 ¶¶ 4–6. In March 2017, U.S. Citizenship and Immigration Services

("USCIS") determined that Petitioner had a credible fear of return to Cuba. Dkt. 14 ¶¶ 7–8. In July 2017, he was released on parole. *Id.* ¶ 9.

On February 19, 2019, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba. *Id.* ¶ 10. One year later, USCIS approved Petitioner for Lawful Permanent Resident status, which applied retroactively to his admission in 2017. *Id.* ¶ 11.

In August 2025, Petitioner was convicted in Lancaster County, Nebraska for criminal possession of a written instrument forgery device. *Id.* ¶ 12; Neb. Rev. Stat. § 28-605. Two months later, he was released from criminal custody and taken into federal immigration custody. Dkt. 14 ¶ 14. On November 26, 2025, an IJ again ordered Petitioner removed to Cuba. *Id.* ¶ 16. Petitioner did not appeal the removal order. *Id.*; Dkt. 7 at 7.

In March 2026, Cuban officials rejected the United States government's request to repatriate Petitioner to Cuba. Dkt. 14 ¶¶ 17, 19. Immigration and Customs Enforcement ("ICE") has expressed an intent to remove Petitioner to a third country; Petitioner has refused to participate in interviews or sign any documents related to potential third-country removal. *Id.* ¶¶ 20–25; Dkt. 7 at 4–5.

On August 27, Petitioner initiated this habeas corpus proceeding and moved for a temporary restraining order ("TRO") enjoining his transfer out of the Western District of Washington during the pendency of this case. Dkts. 1–3. Petitioner alleged that he had been "booked out" of NWIPC and that officials had told him he may be removed to Mexico or another country. Dkt. 7 at 5. That same day, the Court provisionally granted the TRO motion and directed the parties to meet and confer on a TRO briefing schedule. Dkt. 4. On August 28, the parties jointly moved to withdraw the TRO motion after Federal Respondents confirmed that Petitioner remained at NWIPC (Dkt. 10); the Court granted the withdrawal on August 31 (Dkt. 11).

In the following weeks, the parties completed briefing on the underlying habeas petition (Dkt. 7). On September 11, Federal Respondents filed a return (Dkt. 13), and on September 16, Petitioner filed a traverse (Dkt. 15). The habeas petition is now ripe for the Court's review.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at

law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

## IV. DISCUSSION

Petitioner argues that his detention has become indefinite because there is no significant likelihood of his removal to Cuba or a third country in the reasonably foreseeable future. Dkt. 7 at 25–26. He notes that "Respondents are not currently effectuating removals to Cuba," *id.*, and that while ICE intends to remove him to a third country, Respondents have not identified such country or "followed the procedures required by the INA or due process" to implement that removal. Dkt. 15 at 1, 3–6. He further contends that Respondents have engaged in a punitive nationwide policy in which ICE agents are directed "to remove individuals to third countries without any notice or process *at all* where diplomatic assurances are received and, where no diplomatic assurances are received, to provide flagrantly insufficient notice (6–24 hours) and opportunity to respond, in violation of the [INA], regulations, and Fifth Amendment." Dkt. 7 at 14–24, 26–29. Petitioner asks that the Court release him from custody and enjoin Respondents

from re-detaining him or removing him to Cuba or a third country without certain procedural protections. *Id.* at 29–30.

Federal Respondents argue that any delay in Petitioner's removal to a third country is due to his own refusal to cooperate with officials. Dkt. 13 at 7–9. They assert that his claims regarding third-country removal are speculative, and he therefore lacks standing to pursue them. *Id.* at 9–11.

**A. Petitioner's detention has become indefinite.**

Petitioner is a noncitizen detained within the United States for nearly a year since his removal order. *See* Dkt. 7 at 3. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Having been detained already for well over six months after an IJ ordered his removal, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Petitioner cannot be removed to Cuba, and ICE has not identified or obtained a travel document to any potential third country; together, these circumstances "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioner has thus met his burden of showing that removal is not reasonably foreseeable.

Once Petitioner has made that showing, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Here, the alleged noncooperation by Petitioner does not alter the Court's analysis. The record does not reflect that Petitioner misrepresented his status as a Cuban citizen or "refuse[d] to cooperate fully and honestly" with any efforts to obtain a travel document to a third country. *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003). At most, Federal Respondents contend that Petitioner has refused to participate in interviews and sign unspecified documents, Dkt. 14 ¶¶ 20–25, but they do not identify with any particularity how this has affected ICE's ability to secure a travel document.

And it does not appear that Petitioner "controls the clock" of his own detention, as there is no evidence in the record to suggest that his actions have inhibited or delayed ICE in its efforts to effectuate a removal. *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003); *see* Dkt. 14 ¶ 25 ("If Petitioner does not identify a viable third country option for removal, [ICE] will work with other third countries for his removal."). Because the government has failed to rebut Petitioner's showing that his detention has become indefinite, the Court GRANTS the petition for writ of habeas corpus.

**B. Respondents may not remove or seek to remove Petitioner to a third country without affording him meaningful notice and opportunity to respond.**

Having determined that Petitioner is entitled to release on his *Zadvydas* claim, the Court next considers whether he is additionally entitled to his requested injunctive relief. First, citing Respondents' nationwide policies related to third-country removals, Petitioner seeks an "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. 7 at 26–27, 30.

Federal Respondents have stated that ICE "intends to pursue third country removal of this Petitioner." Dkt. 14 ¶ 25. While these efforts may be in their early stages, this is sufficient to demonstrate that Petitioner faces a likelihood of third-country removal under the challenged policies.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C.

§ 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

On July 9, 2025, ICE issued a memorandum updating agency officials on its policy regarding third country removals after the Supreme Court's order in *D.V.D. v. Department of Homeland Security*, 145 S. Ct. 2153 (2025). Dkt. 7 at 86–87. The policy states:

> Effective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under Section 235(b) of the [INA]—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals, as detailed below. A

> "third country" or "alternative country" refers to a country other than that specifically referenced in the order of removal.

*Id.* at 86. The policy continues:

> If the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances.

*Id.* This Court has already concluded that this policy is insufficient to protect a noncitizen's due process rights and "contravenes Ninth Circuit law." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025); *see also, e.g.*, *Vashchuk v. Bondi*, 826 F. Supp. 3d 1282, 1291–92 (W.D. Wash. 2026).

Petitioner has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents' notice that they intend to deport Petitioner under the policy described above demonstrates a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo*, 2026 WL 237501, at *10 (quoting *eBay*, 547 U.S. at 391).

The Court therefore GRANTS Petitioner's request for injunctive relief preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings.[1]

---

[1] Because the Court finds that Respondents violated Petitioner's procedural due process rights, it need not consider his claim that Respondents' actions violated the Administrative Procedure Act. Dkt. 7 at 26–27; Dkt. 13 at 5–7.

**C. Petitioner's remaining requests for injunctive relief are denied.**

Petitioner also requests an order prohibiting Respondents from removing him "to any third country where he is likely to face imprisonment or other punishment upon arrival." Dkt. 7 at 30. In contrast to Petitioner's request for process prior to a third-country removal, the record does not contain sufficient evidence either that (1) removal to *any* third country would be punitive; or (2) that he faces a likelihood of removal to a country where he will be imprisoned upon arrival. *See Nguyen*, 796 F. Supp. 3d at 732–34, 736–39 (granting preliminary injunction prohibiting removal "to any country where [Petitioner] is likely to face imprisonment upon arrival" based on evidence demonstrating that petitioner was similarly situated to detainees who had faced imprisonment upon removal). While there is extensive evidence across multiple cases that the government is carrying out *some* third-country removals that are unconstitutionally punitive, the law surrounding permanent injunctive relief does not allow the Court to infer from those cases that *everyone* who faces third-country removal is likely to be subject to similar irreparable harm. The Court therefore cannot conclude that Petitioner faces a "cognizable danger" as opposed to a "mere possibility" of punitive removal at this time. *Cummings*, 316 F.3d at 897. This request for injunctive relief is therefore DENIED without prejudice.

Finally, Petitioner requests an order that the government may not re-detain him unless it (1) holds a pre-deprivation hearing; (2) obtains a valid travel document to a third country; (3) provides the travel document to him and his counsel; and (4) offers him the opportunity to challenge the third country removal. Dkt. 7 at 29–30. But the record does not contain sufficient argument or authority to establish that the Due Process clause will be violated in the absence of these specific procedures, particularly when any effort to re-detain Petitioner would be governed by the regulations set forth in 8 C.F.R. § 241.13. The Court therefore DENIES these requests for injunctive relief.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the petition for writ of habeas corpus (Dkt. 7) and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction.

1. Respondents are ORDERED to release Petitioner Alexander Acosta Perez from custody[2] within ONE day of this Order.
2. Counsel for Respondents shall submit a status report to the Court by the end of the day on October 6, 2026 confirming Petitioner's release.
3. Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are PROHIBITED from removing Petitioner to a third country without affording him notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 5th day of October, 2026.

Tiffany M. Cartwright
United States District Judge

---

[2] Subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3).").